1   ARTHUR EVRY STATE BAR # 40160
    Attorney at Law
2   1813 Centinela Avenue
    Santa Monica, CA 90404
3   Telephone: (805) 551-4970

4

5   Attorney for defendants
    SEAN BOGUNIA et. Al
6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11

12

13  _____        _____

14  YIGAL MESIKA, an individual                CASE NO.
                                        )
15     Plaintiff,                       )    CV09- 1580 JFW (SSx)
                                        )
16          vs.                         )    DEFENDANTS RESPONSE TO
                                        )
17  SEAN BOGUNIA, an individual,        )    PLAINTIFFS  MOTION FOR FINDING
    REBECCA BOGUNIA, an individual,     )
18  and SEAN BOGUNIA'S ULTIMATE MAGIC   )     THE CASE "EXCEPTIONAL" AND
    PRODUCTIONS, LLC and DOES 1- 9,     )
19  inclusive,                          )    ATTORNEY FEES, ARGUMENT
                                        )
        Defendants.                     )    POINTS AND AUTHORITIES
20                                      )
                                             IN OPPOSITION TO
21

22  _____        _____

23

24

25         Defendants  SEAN BOGUNIA, an individual,   REBECCA BOGUNIA, an

26  individual,  and SEAN BOGUNIA'S ULTIMATE MAGIC  PRODUCTIONS, LLC,

27  DEFENDANTS's do hereby move the Court to deny the award of

28  attorney fees to the Defendants.

                                    1

1

TABLE OF CONTENTS

2

3   INTRODUCTION  . . . . . . . . . . . . . . . . . . . .  4

4   RIGHT TO FEES . . . . . . . . . . . . . . . . . . . .  5

5   RELIEF SOUGHT AND RESULTS OBTAINED BY PLAINTIFF . . . . . .  6

6   RELIEF AND RESULTS  SOUGHT BY DEFENDANTS  . . . . . . . .  11

7   EXCEPTIONAL CASE  . . . . . . . . . . . . . . . . . .  14

8   POST SETTLEMENT EVENTS  . . . . . . . . . . . . . . . .  18

9   ADDENDUM  . . . . . . . . . . . . . . . . . . . . . .  23

10  CONCLUSION  . . . . . . . . . . . . . . . . . . . . .  26

11  Exhibit "A" . . . . . . . . . . . . . . . . . . . . .  27

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

```
 1                           TABLE OF AUTHORITIES
 2                            Federal Statutes
 3
 4   35 U.S.C. 285                    5,6,8,10,13,14,15,22,23,26
 5                    Federal Rules of Civil Procedure
 6   Rule 54 (a)                                              5
```

 7   *Cybor Corp.* v. *PAS Techs.,* 138 F.3d 1448, 1460 (Fed. CirJ998) *(en banc)*  . 13, 16
 8
 9   *Enzo Biochem, Inc.* v. *Calgene, Inc.,* 188 F3d 1362,1370 (Fed, Cir.l999)   . 13, 16
10
11   *Epcon Gas Sys. Inc. v. Bauer Compressors, Inc.,* 279 F3d 1022, 1034-35 (Fed. Cir,
12   2002) . . . . . . . . . . . . . . . . . . . . . . . . . 17
13
14   *Forest Labs., Inc. v. Abbott Labs.,* 339 F.3d 1324, 1330 (Fed. Cir. 2003) . . 18
15
16   *Nat Presto 28 Indus.* v, *West Bend Co.,* 76 F.3d 1185,1197 (Fed. CIT. 1996)   . 14, 17
17
18   *Taurus IP, LLC* v. *DaimlerChrysler COlP"* 559 F.Supp. 2d 947, 967(W.D, Wis.
19   2008 . . . . . . . . . . . . . . . . . . . . . . . . . 17

1        ARGUMENT, POINTS AND AUTHORITIES

2

3                INTRODUCTION

4

5        This is a case wherein the Plaintiff sought to use

6   patent 7,311,609 which he obtained from the United States

7   Patent and Trademark Office to prevent Defendants from

8   producing, marketing or selling three products which Plaintiff

9   alleged infringed his patent and a pending patent application

10  of his. Defendants refused to accede to Plaintiffs pre or post

11  filing demands as they contended that their devices did not

12  infringe any valid claim of Plaintiff's patent or patent

13  application. Most of their justification for their position

14  was based on the " prior art" a small portion of which is

15  referenced by the exhibits prepared for the trial of this case

16  and all of which is included in the provision of the

17  settlement agreement that excludes from the restrictions

18  accepted by Defendants for any future products they may

19  develop the design as exemplified in Exhibits 1 and 2 to the

20  settlement stipulation as entered into in open court excluding

21  the elements of said exhibits which are to be found in the

22  prior art.

23        There was no admission of infringement by the Defendants

24  and no payment for any past acts of the defendants to

25  Plaintiff. Both Plaintiff and Defendant are magicians and

26  Defendants has specialized in the development of invisible

27  thread devices for both the stage and close up work for more

28  than two decades. (See Defendant Sean Bogunia's trial

                                4

1   testimony declaration.

2       A stumbling block to a settlement was the demand by the

3   Plaintiff that Defendants pay his attorney fees. At the Courts

4   suggestion the parties agreed to bifurcation of the issue of

5   each parties right to attorney fees from the other and all

6   other issues were resolved in a settlement that was placed on

7   record by Judge John F. Walters on April 2, 2010 in open

8   Court. The Defendants decided that they would not seek an

9   award of attorneys fees as under the statutes it was going to

10  require an extensive trial of the factual issues relating to

11  the Plaintiffs lack of Candor in applying for patent 7,311,609

12  before the USPTO. They therefore requested the Court to Deny

13  their right to attorney fees and their requested Order was

14  signed by the Court.

15      Plaintiff, not withstanding the clear language of the

16  very sections under which he seeks to recover attorney fees

17  clear is proceeding to seek his attorney fees by the present

18  motion.

19                        RIGHT TO FEES

20      The provision for recovery of attorney fees sought

21  herein  is found in 35 USC 285

22      "The court in exceptional cases may award reasonable attorney fees to the

23      prevailing party. "

24

25      Federal Rules of Civil Procedure, Rule 54 cited by Plaintiff in the opening line of

26  Plaintiff's motion. Rule 54 opens with the following: " Judgments; Costs

27      (a) Definition; Form.

28

"Judgment" as used in these rules includes a decree and any order from which an appeal lies. A judgment should not include recitals of pleadings, a master's report, or a record of prior proceedings."

There is no judgement herein other than for dismissal of the case pursuant to an agreement of settlement between the parties. No appeal lies from such an Order of the Court and FRCP Rule 54 adds nothing to Plaintiff's claims herein for attorney fees.

Defendants therefore are requesting the Court not to award Plaintiff any attorney fees as to do so would require a determination that Plaintiff prevailed in the litigation which Plaintiff clearly did not.

To prevail is to win. To be entitled to attorney fees under this section the Plaintiff must first establish that Plaintiff prevailed in the case. In their motion and argument Plaintiff's counsel skip over this requirement of 35 U.S.C. 285. They expend many pages on issues that are only reached after establishing that one has prevailed in the litigation. Their argument is devoid of any reference that establishes that they prevailed in this litigation.

RELIEF SOUGHT AND RESULTS OBTAINED BY PLAINTIFF

Defendants call the Courts attention to the Plaintiff's complaint wherein he sought to gain from the Court and against Defendants and in Plaintiff's favor seven items of relief in this litigation.

Plaintiff's first request is found on page 10 at lines 16 to 22 of the complaint is for an injunction against the Defendants.

I

"A.  For an order preliminarily and permanently enjoining SEAN BOGUNIA, an individual,   REBECCA BOGUNIA, an individual,  and SEAN BOGUNIA'S

6

1   ULTIMATE MAGIC  PRODUCTIONS, LLC, (and its partners, members, officers, directors,

2   agents, servants, attorney's and employees) and all other persons acting in concert with them,

3   from committing any further acts of infringement, including but not limited to, making,

4   using, importing, offering to sell, and selling the accused products, or aiding or abetting or

5   assisting others in such infringing activities."

6          No injunction has been issued and no right to such an injunction has been

7   established in this case.  To have the right to claim that Plaintiff had prevailed on this issue

8   an injunction as requested must have been issued by the Court against the Defendants or

9   agreed to as a part of the settlement. At no time from the filing of the Complaint herein

10  through the stipulation to a settlement herein on April 2, 2010 did the Plaintiff even make a

11  motion to the Court to impose such an injunction on Defendants.

12                                          II

13         Defendants further call the Courts attention to the Plaintiff's complaint wherein he

14  sought to gain from the Court and against Defendants Seven substantive results in Plaintiff's

15  favor through the complaint herein. Plaintiff's second request is found on page 10 at lines 24

16  to 28 is for an injunction against the Defendants.

17

18         "B.   For an order directing Defendants to file with this Court and to serve on

19  the Plaintiff within thirty (30) days after service on Defendants of the injunction granted

20  herein, or such extended period as the Court may direct, a report in writing, under oath,

21  setting forth in detail the manner and form in which Defendants have fully complied with the

22  injunction of the Court;

23         The second demand for judgement never was given as it was dependent on the

24  granting of the first request for a preliminary injunction and a permanent injunction which

25  never was granted by the Court.

26          At no time from the filing of the Complaint herein through the stipulation to a

27  settlement herein on April 2, 2010 did the Plaintiff even make a motion to the Court to

28  impose such an injunction on Defendants.  Clearly Plaintiff did not prevail on this second

7

1    item of relief sought in Plaintiff's complaint.

2

3                                        III

4           Defendants further call the Courts attention to the Plaintiff's complaint wherein he

5    sought to gain from the Court and against Defendants  Seven substantive results in Plaintiff's

6    favor. Plaintiff's  third request is found on page 11 at line 1 for an order against the

7    Defendants in the following terms.

8                  "C.   For an order seizing and impounding all accused products:"

9    .          No such Order was made in this case. If Plaintiff had prevailed in this then there

10                 must be an Order where none exists and there is no agreement on this issue other

11                 than the dismissal of the action. Plaintiff did not prevail in this request for relief

12                 sought in his complaint.

13                                       IV

14          Defendants further call the Courts attention to the Plaintiff's complaint wherein he

15   sought to gain from the Court and against Defendants Seven substantive results in Plaintiff's

16   favor. Plaintiff's fourth request is found on page 11 at lines 3 to 7 is for a judgement  against

17   the Defendants for Plaintiff's alleged lost profits.

18

19                 "D.   For a judgement to be entered for Plaintiff against Defendants in an

20                 amount equal to Plaintiff's lost profits, and/or the profits Defendant made, in

21                 connection with Defendants' sales of products that infringe the '609 Patent

22                 (and any patent issuing from the '656 Application), or in the alternative, a

23                 reasonable royalty, pursuant to 35 U.S.C. §§ 284 and/or 289, and according to

24                 proof at trial. "

25

26          No such Order was made, no such Judgement was entered and no term of the

27   settlement agreement provides for any sum to be paid to the Plaintiff by the Defendants other

28   than an illusory License fee in the event of the future use of a design which Defendant has

1   not, is not and under the terms of the settlement can not use as physically exemplified in

2   Exhibits 1 and 2 of the Settlement stipulation entered in open Court on April 2, 2010 except

3   to the extent the design is found in the "prior art".  This is not an item on which Plaintiff

4   prevailed in this case and can not be a grounds for the award of attorney fees to Plaintiff.

5                                                          V

6           Defendants further call the Courts attention to the Plaintiff's complaint wherein he

7   sought to gain from the Court and against Defendants Seven substantive results in Plaintiff's

8   favor. Plaintiff's fifth request is found on page 11 at lines 9 to 11 is for a judgement  against

9   the Defendants for Plaintiff's alleged lost profits prior to the issuance of the 656 Application.

10

11           "E.    For a judgement to be entered for Plaintiff and against Defendants for

12   reasonable royalty for Defendants' pre-issuance infringements based on '656 Application, if

13   applicable."

14

15           No such Judgement was entered and no provision of the settlement even refers to

16   the '656 Application of the Plaintiff. Plaintiff did not prevail on this request for relief.

17                                                          VI

18           Defendants further call the Courts attention to the Plaintiff's complaint wherein he

19   sought to gain from the Court and against Defendants Seven substantive results in Plaintiff's

20   favor . Plaintiff's sixth request is found on page 11 at lines 13 to 14 is for a judgement

21   against the Defendants for prejudgement and post judgement interest.

22           "F.    For a judgement awarding to Plaintiff prejudgement and postjudgement

23   interest until the award is fully paid."

24

25           No award was made to Plaintiff and under the terms of the settlement no amount of

26   money is to be paid by the Defendants to the Plaintiff. The Plaintiff did not prevail on this

27   request for judgement against the Defendants.

28                                                          VII

1    Defendants further call the Courts attention to the Plaintiff's complaint wherein he

2    sought to gain from the Court and against Defendants Seven substantive results in Plaintiff's

3    favor. Plaintiff's seventh request is found on page 11 at lines 3 to 7 is for a judgement

4    against the Defendants and for Plaintiff finding that Defendants had willfully and

5    deliberately infringed Plaintiffs' patent rights.

6

7    "G.    For a judgement that Defendant has willfully and deliberately infringed

8    Plaintiff's patent rights, such that Plaintiff is entitled to enhanced damages under the Patent

9    Laws of the United States;"

10

11    No judgement for Plaintiff has been entered in this now closed case. No finding of a

12    right to enhanced damages was made or is any such right a part of the settlement agreement.

13    No money is to be received by Plaintiff under the terms of the settlement agreement absent

14    an award of attorney fees which are only to be awarded under the Laws of the United States

15    to a prevailing Party.

16    35 U.S.C. 285

17                                         VIII

18    The only issue which has yet to be resolved is found in Plaintiff's eighth request for

19    judgement against the Defendants for attorney fees and costs.

20

21    "H.    For an award of costs, including attorney's fees, incurred in bringing

22    this action; and "

23

24    This issue is open and set for hearing on May 17, 2010 at 1:30 PM before this

25    Court. Defendants contend that Plaintiff's motion does not have merit as it does not contain a

26    showing that they have met the pre condition to an award of attorney fees under 35 U.S.C.

27    285 specifically Plaintiff  having prevailed in the litigation.

28                                         VIII

1    Plaintiffs have a prayer for other and further relief. As the case is closed no relief

2    can be granted under this provision and

3    ”I.   For such other and further relief as this Court may deem just and

4    equitable under the circumstances.”

5    No relief has been granted to Plaintiff under this request and the case is closed so

6    none can be granted hereafter absent a reopening for good cause by the Court.

7    RELIEF AND RESULTS  SOUGHT BY DEFENDANTS

8    IX

9    Defendants sought the following in their Answer to the complaint herein:

10   Defendants gained by way of settlement their first request that Plaintiff not recover on his

11   complaint the seven things he asked for from the Court. To Defendants this was a clear win.

12   A.    Plaintiff be denied any recovery under his complaint. ( A win for

13   Defendants) Plaintiff received no compensation for any alleged infringement

14   by Defendants actions prior to the date of settlement and no agreement to pay

15   a royalty on any existing products of Defendants.

16   B.    That the Court find that Patent US 7,311,609 609 does not cover all miniature

17   spooling devices and is limited to those that conform to the description given

18   in the Patent ie having the shape of a pen and the use of the particular

19   construction designated in Patent 609. ( Defendants agreed not to seek this

20   and thus this was not won by Defendants, nor was it requested as an item of

21   relief in the complaint. )

22   C.    That the Court find void Patent US 7,311,609  for the intentional failure of

23   the Inventor to disclose the Prior Art in his application for patent or in the

24   proceedings before the Patent office related to the approval of Patent US

25   7,311,609 (Defendants agreed not to seek this and thus this was not won by

26   Defendants  nor was it requested as an item of relief in the complaint. )

27

28   D.    That the Court find Plaintiff' obtained his Patent US 7,311,609  as a result of

intentionally concealing known Prior Art and on ground  find the Patent US
7,311,609  to be void as obtained through concealment of Prior Art known to
Plaintiff and this constitutes a basis for an award of damages to Defendants
according to Proof at Trial  (Defendants agreed not to seek this and thus this
was not won by Defendants  nor was it requested as an item of relief in the
complaint.  )

D.   For costs and expenses of this litigation including attorney's fees incurred in
defending this action, and  (Defendants agreed not to seek this and thus this
was not won by Defendants  nor was it requested as an item of relief in the
complaint that Defendants receive their attorney fees or costs. )

E.   Such other and further relief as the Court deems just and equitable under the
circumstances.   (Defendants agreed not to seek this and thus this was not
won by Defendants. )

There may not have been any victory for Defendants beyond being free of all claims
of Plaintiff that they had prior to the time of settlement infringed his patent or patent
application and Defendants not having any obligation to pay Plaintiff any damages for the
seven items sought by Plaintiff in his complaint.

Defendants did agree not to seek in the USPTO to have the patent 7,311,609
invalidated. They did agree not to use any device in the shape of Exhibits one and two to the
settlement in any device unless the opening was closed off at its base.

Defendants did agree to pay a royalty of 5% if they did use a device in the shape of
Exhibits one or two in any future device they may market to the extent that they were not
revealed in "prior art" in which case no royalty would be payable.

Defendants do not recall the use of the term confidentiality in the stipulation made
for settlement of this case before Judge John F. Walters. None the less they did retract all

1    statements made by them and requested Ron Jaxon to retract all statements made by Ron

2    Jaxon in regard to this case.

3

4          If there was any prevailing party it was the Defendants who do not under the terms

5    of the settlement need to pay any damages to Plaintiff. Do not have any injunction entered

6    against them. Do not have to make any accounting to the Court or Plaintiff. Do not have to

7    discontinue sales of the products accused by Plaintiff.  Defendants ask that the Court if it

8    deems it necessary to declare a winner to declare that Defendants prevailed in this case as

9    evidenced by the terms of the settlement.

10   ///

11

12                                         X

13               REQUIREMENTS FOR RELIEF UNDER 35 U.S.C. 285

14

15          Pursuant to 35 U.S.C. § 285, "The court in exceptional cases may award

16   reasonable attorney fees to the prevailing party." It is only to the prevailing party that

17   the Court may award in "exceptional" cases reasonable attorney fees.

18

19          To determine whether an award of fees under this statute is appropriate,

20          (1) the court determines whether there is clear and convincing evidence that the

21   case is "exceptional";

22          and

23          (2) if so, the Court then determines whether an award of attorney fees is

24   warranted. *Cybor Corp.* v. *PAS Techs.,* 138 F.3d 1448, 1460 (Fed. CirJ998) *(en banc);*

25    *see also Enzo Biochem, Inc.* v. *Calgene, Inc.,* 188 F3d 1362,1370 (Fed, Cir.l999). The

26   award of such fees is discretionary, and courts may "weigh intangible as well as tangible

27   factors: the degree of culpability of the infringer, the closeness of the question, litigation

28   behavior, and any other factors whereby fee shifting may serve as an instrument of justice.

1    *"Nat  Presto 28 Indus.* v, *West Bend Co.,* 76 F.3d 1185,1197 (Fed. CIT. 1996).

2         Plaintiff's motion is silent on the requirement that they must prevail to qualify for

3    attorney fees under 35 U.S.C. 285. Only if Plaintiff prevailed are they entitled to move to

4    establish first that the case is "exceptional" as required by 35 U.S.C. 285 and then to show

5    that the culpability of the infringer was such that justice in the Courts discretion will be

6    served by a shifting of the expenses of litigation. If the Court finds that the Plaintiff did not

7    prevail the balance of this response is in fact moot. If the Court were to find that the Plaintiff

8    prevailed then and only then the following sections of this response addresses why in this

9    case Plaintiff still should not be awarded discretionary attorney fees as requested in

10   Plaintiff's Motion for Attorney Fees.

11

12                                            XI

13

14                                  EXCEPTIONAL CASE

15

16        If and only if the Court finds that Plaintiff prevailed then before it can exercise its

17   discretion in granting attorney fees it must first determine these further issues.  Under 35

18   U.S.C. A. 285 if this case meets the standards for finding it to be an exceptional case. These

19   standards are straightforward, discretionary, and not applicable to this case. Pursuant to 35

20   U.S.C. § 285, "the court in  exceptional cases may award  reasonable attorney fees to the

21   prevailing party."

22

23   If the Court were to find that the party asking for the award of fees is the prevailing party. In

24   this case the Plaintiff who is seeking fees did not get by judgement or by settlement any of

25   the demands in his complaint. He did receive in the settlement two things a prospective

26   royalty if Defendants use his notch design as shown in exhibits 1 and 2 to the settlement

27   without the Defendants closing the bottom of the notch unless there is prior art that uses an

28   open notch, as an example the Ultimate Float Controller, Defendants Exhibits 24 & 25 which

                                            14

1    has a rectangular notch for the thread to exit so a rectangular notch would not result in any

2    royalty to Plaintiff or a violation of his patent rights. The other consideration that the Plaintiff

3    gained was the Defendants agreement not to seek a re examination by the United States

4    Trademark and Patent Office seeking to invalidate Plaintiff's patents.  The Defendants

5    agreed not to make a product that competes with the Spider Pen and utilizes a cover notch as

6    in Exhibits 1 and 2 of the settlement.

7        Defendants have  asked the Court to find that to prevail means to win at least a part of

8    what one sought to obtain in bringing the action. None of the relief sought was gained by the

9    Plaintiff herein. Therefore the lengthy Points and Authorities cited by the Plaintiff as to an

10   award of attorney fees under 35 U.S.C. 285 are not relevant as the precondition to such an

11   award is winning the case. This Plaintiff did not do.

12

13       To determine whether an award of fees under this statute is appropriate to the

14   Plaintiff if the Court finds Plaintiff to be a prevailing party, Plaintiff would have to

15   establish by evidence these other factors before the Court has in its discretion the

16   power to award Plaintiff any attorney fees.

17       (1) the court determines whether there is clear and convincing evidence that

18   the case is "exceptional" It is the burden of Plaintiff to establish that this is an

19   "exceptional" case.

20       Had Defendants they may have been able to establish the case being

21   exceptional as to Defendants in that the products of Defendants do not resemble in

22   any way the Pen shaped device set out in the Abstract or claims of Patent 7,311,609.

23   "A miniature electrically powered thread reel and precision spooling mechanism fully

24   and discretely hidden inside the cap of a working ink pen" None of the accused

25   devices fit this description quoted from the opening lines of the patent 7,311,609

26   abstract. It is exceptional to seek to establish infringement where as here even a look

27   at the products establishes their clear and distinct lack of similarity as to any aspect

28   not revealed in "prior Art".

It is called to the Courts attention that in the Final Pre Trial Order submitted to the Court Plaintiff admitted that the use of a Pen shaped device existed in the prior art as did motorized spooling devices, invisible thread devices, etc. Plaintiff had previously contended that he held patent protected rights to all elements set out in each of the claims in his patent 7,311,609. AS an example a motorized spool.

Plaintiff argues that there was a use of unfair litigation tactics, that plaintiff did not understand the position of defendants yet they made no request for any clarification either by informal requests or by way of a motion. Defendants were open to settlement but not open to any agreement that admitted any of their products infringed Plaintiff's patent or patent application.

Considering the results obtained, if this was frivolous litigation on the part of any participant it was so on the part of the Plaintiff.  If Plaintiff had prevailed in his action and met this requirement of establishing the case as "exceptional" by clear and convincing evidence, then  Plaintiff would  still would have to:

(2) if so, the Court  then (and only then) determiners whether an award of attorney fees is warranted. Such an award being in the sole discretion of the Court after the requesting party has by clear and convincing evidence has established the case being exceptional as to the conduct of the Opposing party.

*Cybor Corp.* v. *PAS Techs.,* 138 F.3d 1448, 1460 (Fed. CirJ998) *(en banc); see also Enzo Biochem, Inc.* v. *Calgene, Inc.,* 188 F3d 1362,1370 (Fed, Cir.l999).


The award of such fees is discretionary, and courts may "weigh intangible as well as tangible factors: the degree of culpability of the infringer, ( here no infringement was found or agreed to in the settlement and no damages for any prior acts of Defendants were made payable under the terms of the settlement) the closeness of the question, ( none of Defendants products resemble a pen or utilize any aspects of Plaintiff's claimed invention that are not show in the "prior art" litigation behavior, ( in this case the attorneys for the parties worked to resolve all issues

1   impeding moving the case forward, and moved the case forward. Spoke frequently of

2   finding a way to reach a settlement and did inj fact resolve the case on the last days

3   before commencement of the trial.) and any other factors whereby fee shifting may serve

4   as an instrument of justice. "

5          *Nat '[ Presto Indus.* v, *West Bend Co.,* 76 F.3d 1185,1197 (Fed. CIT. 1996).

6          This is a case cited by the Plaintiff's attorneys. The facts are a case where an

7   infringement was found (not the case here).

8          As no infringement was found there can be no finding of culpability. In fact here even

9   to a casual observer the resemblances of Plaintiff's products to Defendants is about as close

10  as a Deck of cards being mistaken for a Ball Point Pen. Even then the use of a Pen shape to

11  disguise a piece of magic apparatus was and is a part of the prior art set out in the settlement

12  agreement. Defendants  Exhibits 10, 11, 12, 51 through 56.

13         What constitutes an "exceptional" case is a factual, but subjective,

14  determination: The prevailing party may prove the existence of an exceptional case by

15  Showing:  inequitable conduct before the litigation misconduct; vexatious, unjustified, and

16  otherwise bad faith litigation; a frivolous suit or willful infringement. Litigation

17  misconduct and unprofessional behavior are relevant to the award of attorney fees,

18  and may suffice, by themselves to make a case exceptional.

19         *Epcon Gas Sys. Inc. v. Bauer Compressors, Inc.,* 279 F3d 1022, 1034-35

20  (Fed. Cir, 2002) (citations omitted); *see e,g, Taurus IP, LLC* v. *DaimlerChrysler COlP"*

21  559 F.Supp. 2d 947, 967(W.D, Wis. 2008). Defendants believe that the case of Plaintiff  is

22  one which was never justified as none of their devices use a cone with a notch as shown in

23  Exhibits 1 and 2 of the settlement. None of their products use any protected aspects of

24  Plaintiff's patent 7,311,609.

25         As an example of litigation misconduct after the conclusion of the settlement

26  conference conducted successfully by Judge Anderson and after the recitation by Judge

27  Anderson of the terms of the settlement terms which were all based on only exhibit 1 to the

28  settlement, as the parties were preparing to leave the Court Room of Judge Percy Andersen

to go to the Court room of Judge John F. Walters Plaintiff without showing it to Defendants presented Exhibit two to the settlement to Judge Anderson as a souvenir of the cap that was utilized in the arriving at the settlement.  That Exhibit 2  never was a part of the previous negotiations of the parties. Defendants when they became aware of this addition to the settlement, were willing to overlook this example of litigation misconduct and unprofessional behavior so as to let the Court finalize the settlement of the case.

All of which is beside the point as Plaintiff did not win any of the items he demanded in his complaint that have been resolved up to this time. That is all of the substantive issues relating to infringement. The only issue remaining is Plaintiff's request for attorney fees.

Defendants decided not to request an award of their attorney fees, even though by any reasonable analysis they were the prevailing party in this litigation.

Here it is the non prevailing party who is seeking to paint the defendants with a brush that far more clearly represents the conduct of the Plaintiff. Here is a litigant who has sought to use threats of law suits and this law suit to intimidate others so that they do not continue to produce products that in no way infringe any valid claim of his patents, both here in the United States and in Europe where he has no patent. The proof of all this would require a trial with the taking of testimony and cross examination of the witnesses..

In a case cited by the Plaintiff there is a clear and appropriate statement that applies to the facts herein."The pertinent inquiry under Section 285 is whether the plaintiff knew or should have known that its claims were baseless but pursued them anyway."

*Forest Labs., Inc. v. Abbott Labs.,* 339 F.3d 1324, 1330 (Fed. Cir. 2003).

Plaintiff argues in his motion from page 11 at line 12 through page 14 line 28 as if there had been a finding of infringement or an admission of infringement, neither of which happened in this case. It seems that the Plaintiff is still unaware that he did not obtain any of his seven substantive goals sought in the litigation that he filed.

POST SETTLEMENT EVENTS

This is relevant to another matter that has been raised by the Plaintiff. Plaintiff alleges

1  that Defendant Sean Bogunia breached the settlement agreement by communicating the

2  contents of the agreement to Joe Stevens in an e mail exchange. Plaintiff FAILS TO

3  INFORM THE Court that Plaintiff Yigal Mesika after the settlement contacted Joe Stevens

4  which is a key fact here which Plaintiff chose to leave out. That Plaintiff initiated the

5  communications when he sent an e mail to Joe Stevens, the head of a major magic

6  distribution company stating that he had beat Sean Bogunia in this law suit and Stevens

7  magic must not sell certain products that he advised infringed his patents. If there was a

8  breach of any existing provision for confidentiality  then it was first breached by the Plaintiff.

9      Of course this issue is far from clear as there may never have been entered into the

10  settlement a provision for confidentiality. The attorneys for the parties have requested a

11  transcript of the hearing in which the settlement was entered into the record before Judge

12  John F. Walters to ascertain if there even is a confidentiality provision in their settlement

13  agreement as stipulated in open Court. It is the position of the Defendants that once the

14  Plaintiff disclosed his controverted understanding of the settlement agreement they were no

15  longer bound to remain silent in the face of the Plaintiff's prior breach and had the right to

16  publicize their interpretation of the cases outcome.

17      Yes the rules of Court do provide for confidentiality, but in this case Plaintiff asked

18  that a person not a litigant that is an outside party be present during the settlement process.

19  Thus at the request of the Plaintiff their was a waiver of confidentiality. Much as a discussion

20  between an attorney and a client is not privileged if a third party not having any rights of

21  privilege is present during the communication.

22      As to Ron Jaxon, I did not realize that he was with the Defendants during the

23  settlement conference in which they participate by phone. Had I known of his presence I

24  would have asked the Court to permit it as they had already permitted a friend of the Plaintiff

25  to be present. Plaintiff has requested that an injunction be Ordered as to Ron Jaxon, which

26  action Defendants will not contest. Defendants have already retracted all their statements in

27  regard to the settlement of this case. Defendants ask that the Court bear in mind that the

28  public discussion of the settlement arose after Plaintiff made false statements to Joe Stevens

1    as to the terms of the cases resolution.

2          The Plaintiff is requesting that the Court "Specially, as a result of the herein

3    actions, Plaintiff requests that the Court  sanction Defendant by (1) ordering that he

4    publicly retract the misleading public ( which was done before Plaintiff's motion for fees was

5    filed and Plaintiff's attorneys were advised of the retractions by Defendants attorney even

6    though there is a question as to the existence of a confidentiality term in the recorded

7    settlement agreement.)

8    statements he made with respect to: (a) the "judge's opinion" about the merits (or

9    alleged lack thereof) of Plaintiff's case; (b) Judge Walter's statement with respect to the

10    quality of plaintiff's products; and (2) misstatements with respect to the events that occurred

11    during the settlement conference ( all of which were previously agreed to and carried out

12    prior to the filing of this motion by the Defendants and at their request to the best of their

13    knowledge by Ron Jaxon.  Finally, the Plaintiff requests any other  sanctions the court deems

14    just and proper under the circumstances, including monetary sanctions.

15          It appears that Plaintiff Yigal Mesika thinks it is permissible for him to speak out on

16    his opinion as to the cases resolution to third parties including Joe Stevens. Yigal Mesika

17    then thinks that the Defendants are not to be permitted to refute Plaintiff's to them erroneous

18    statements regarding the resolution of this case. There was a breach of confidentiality, if that

19    was in fact a part of the agreement entered into by the parties as stipulated to in open Court

20    first by the Plaintiff. The initial breach was by the Plaintiff who is now complaining of the

21    Defendants response for which the Defendant has made a public apology and acknowledged

22    his statements were made in anger. Defendant was angry that the Plaintiffs disclosures to Joe

23    Stevens were untrue and it was Joe Stevens who sought to have Defendants verify the claims

24    made by Yigal Mesika the Plaintiff herein to having won this case.

25

26          A settlement is a compromise in which each party agrees to accept less than they

27    would gain by a total victory. In a total victory by Plaintiff he would have obtained the seven

28    substantive items sought in his complaint. In a total victory for the defendants they would

1   have recovered their attorney fees, had the Mesika patent 7,311,609 declared to be invalid

2   and would not have been constrained in seeking the invalidation by requesting a re

3   examination if the Court simply found no infringement. As set forth in the analysis above

4   Plaintiff obtained none of his seven substantive goals and the Defendants obtained . For

5   Plaintiff to claim he was the victor to a third party who deals with both Plaintiff and

6   Defendants was a violation of any term of confidentiality and to censure Defendants for

7   responding is a request not deserving of any merit. In Exhibit "A" attached to this response

8   are set out e mails from Plaintiff to Joe Stevens and responses showing Plaintiffs breach of

9   the uncertain at this time provision for confidentiality if it exists in the settlement agreement

10   as stipulated in open court by the parties entered by the Court on the record. A transcript of

11   the April 2, 2010 hearing has been requested and has not yet been received.

12       Throughout this litigation both parties counsel have worked diligently for a

13   resolution. It is surprising to see the Plaintiff who until April 2, 2010 was unwilling to settle

14   now claim that the Defendants were being unreasonable. Plaintiff insisted on payment of all

15   his attorney fees and the settlement was only accomplished by the Defendants agreement that

16   the issue of attorney fees be bifurcated from the balance of the settlement of the case.

17       Defendants have requested that I not enter into the gross miss descriptions of the

18   Plaintiff as to his positions and as to Defendants positions regarding settlement or the nature

19   of their defenses.

20

21       A defendant may pursue even mutually contradictory defenses. It is not a grounds for

22   a claim of litigation misconduct or bad faith to pursue all defenses open to a defendant.

23

24       This has not been done by the Defendants herein. From the first they challenged the

25   Plaintiff's patent as to its validity, the interpretation of the claims and the scope covered by

26   the patent if it was valid and the lack of "candor and good faith of the Plaintiff in his dealings

27   with the USPTO during the application process.

28       There were a number of meetings between Plaintiff's former Counsel Mark Nielsen

and Defendants Counsel in regard to all aspects of the case. A spirt of cooperation existed between counsel throughout this case. Atleast until the pending motion for fees and even after that counsel are continuing to cooperate on obtaining and paying for the hearing transcript.

There were meetings in persona and by phone between Tracy Wells and Arthur Evry in regard to settlement of the case and the positions of their clients. These continued after the failed mediation and throughout the perod of trial preparation. After the fisrt pre trial conference Defendants were led to believe that there was an acceptable settlement and rather than prepare pre trial documents Defendants Counsel worked on the terms of settlement discussed at the Court House after the first pre trial conference on Friday March 26, 2010.

On the morning of March 29, 2010, Defendants' counsel asked Plaintiff's counsel if they had a settlement and if so he would come to her office in Beverly Hills to complete the Settlement rather than finish the pre trial documents of Defendants for filing with the Court. Plaintiff's counsel Tracy Wells said there was a settlement and Defendants Counsel drove to Beverly Hills to meet with her and reduce the terms to writing. For two hours they met and the conference terminated with Plaintiff reported by his counsel after a phone conversation insisting on receipt of attorney fees which Defendants had clearly refused to pay be included in the settlement. The counsel for the parties agreed to ask the Court to extend the time for filing documents. The Court held two phone conferences with the parties attorneys. The Court scheduled the settlement conference with Judge Percy Anderson which resulted in the settlement of the case.

Plaintiff in their motion page 25 lines 3 to 11 "The underlying policy goals of Section 35 U.S.C. 285, which include the prevention of injustice, deterrence and compensation, would all be satisfied here if fees were awarded, and doing so would protect future litigants in this Court from similar litigation misconduct Upon a finding that Plaintiff is entitled to fees and expenses, Mesika will submit a detailed accounting of the relevant fees and expenses, which Mesika estimated to be approximately $70,000."

1    The Court did not provide for the bifurcation of the issue of attorney fees when

2    allowing each side to file motions seeking their attorney fees. The Defendants can not

3    respond as to reasonableness without knowing what specific fees for what specific services

4    are being requested. Defendants do believe that this is a moot point as Plaintiff has failed to

5    make any showing in the motion for fees that Plaintiff prevailed in the litigation. 35 U.S.C.

6    Section 285 makes this a core requirement to recovery of attorney fees.

7    An award of fees in favor of Plaintiff is not even permitted by the existing law. If any

8    party is guilty of frivolous conduct of litigation and prolongation of this litigation it is the

9    Plaintiff. He speaks of a motion to reopen the case, he objects to Defendant Sean Bogunia's

10   response to his claims to having won the case against Defendants to third parties i.e. Joe

11   Stevens of Stevens Magic. Which statements were communicated by Joe Stevens to Sean

12   Bogunia.

13                              ADDENDUM

14   The Defendants gave up the right to seek a determination by the USPTO of the validity of the

15   7,311,609 patent. There has not been any determination as to validity which would require a

16   factual inquiry by the trial Court to determine the proper Claim Interpretation. Exhibits set

17   out below show the existence of extensive prior art. All of which was revealed in answers to

18   request for production served by Plaintiff on Defendants.

19   1.    Patent U.S. 7,311,609 Date of Patent December 25, 2007

20   2.    Patent U.S. Pending US 2008/01 08448 A1 Date of Patent  December 25, 2007

21   3.    US Patent 0204758 (2 Pages) Spool Holder Patent Date June 11, 1878

22   4.    US Patent 0686324 (3 Pages) Roll holder Patent Date November 12, 1901

23   5.    Copy of Patent 3,698,546 This patent "Spool Cover and Assembly Application

24         October 8, 1970 Granted October 17, 1972

25   6.    United States Patent and Trade Mark Office correspondence between the Patent

26         Office and Yigal Messika and his agents Bates numbers YM0005 through YM0140

27   7.    Cyclopedia of Magic Copy right 1949 Henry Hay from Dover reprint copies of pages,

28         title page, Copyright page, 383 & 391 -2

8.     Copies of pages from Reelistic Magic Lewis Ganson 1941 (1953) reprint by Harry Stanley, Unique Magic Studio: Cover, contents page, pages 3 - 5, 26, 27, 49 and back cover

9.     Copies of pages from Max Holdens Magic Shop Catalog 5 copyright, 1936, cover, pages 1, 38, 39,

10.    Pro Pen reel

11.    Kevlar Pen Reel 2002

12.    Kevlar Pen Reel 2005

13.    Spider Pen Device

14.    Picture of Spider Pen "notch" and defendant's iThread "slit"

15.    iThread Device

16.    Picture of defendants iThread device top view

17.    Picture of defendants iThread device bottom view

18.    Picture of defendants iThreadX device bottom view

19.    Hummingbird Reel John Kennedy

20.    Picture of Humming Bird Reel of John Kennedy

21.    John Kennedy's Humming Bird Reel Instruction

22.    John Kennedy's Hummingbird Reel Video (On DVD)

23.    John Kennedy's Stealth Retractor Magazine Ad GENII 1999

24.    Ultimate Float Controller Stefan Schutzer

25.    Ultimate Float Controller Ad, GENII Magazine August 1999

26.    Instructions for a miniature thread reel that was constructed by the author of the book "Pockets Full of Miracles", Diamond Jim Tyler.  Exhibit is three pages from this book published in June 2000.

27.    Picture of Sean Bogunia's Ultimate Dancing Hank (original version) 2001

28.    MAGIC Magazine Ad January 2001 for the Ultimate Dancing Hank (Prior Art)

29.    MAGIC Magazine Front Cover January 2001

30. Copy of FOX TV Broadcast from 2000 demonstrating some of the effects produced by Sean Bogunia's Ultimate Dancing Hankey.

31. Abbott's Competition first place video Sean Bogunia 2000

32. Picture of Sean Bogunia's Ultimate Dancing Hanky, a (New Version) 2005

33. Picture of Sean Bogunia's Ultimate Dancing Hank (New Version)

34. Sean Bogunia's Ultimate Dancing Hank has and uses a computer controlled programable  miniature motorized spooling device.

35. Sean Bogunia's Ultimate Dancing Hank 2005 redesign.

36. Back cover of Magic Magazine August 2001

37. Picture of Sean Bogunia's Programmable Thread System Motor Pods 2005

38. Magazine Ad for the Ultimate Float Controller This shows an advertisement for

39. the Ultimate Float controller from the August of 1999 issue of GENII magazine.

40. Tracy L. Wells letter of May 30. 2008 to Defendants

41. Tracy L. Wells letter of June 5. 2008 to Defendants

42. Cease and Desist from Yigel Mesika (2 Pages) Marcus Luis Risso  October 27, 2008 Bates 443

43. Power Reel Ad Genii 2003

44. Haunted House 2001 Contract (3 Pages)

46. Haunted House 2001 Expense Report (3 Pages)

47. 2003 Video Flying Ghost (On DVD)

48. David Copperfield Contract (3 Pages)

49. Chris Kenner agent of David Copperfield email (2 Pages)

50. Fax to our Attorney for Copperfield Contract

51. Stevens 2002 Pen Communication Device

52. Stevens Catalog Winter 2002 Cover

53. Kevlar Pro Pen Reel Ad September 2003 Linking Ring

54. Phantom Pen Ad Magic Magazine October 1998

55. Incredible Floating Pen Magic October 1998

25

1   56.   Telepathic Pen and Toe Switch Ad Genii August 1999

2   57.   Ultimate Spy by H. Keith Melton copyright page 1996, 2002 pages 103, 106, 109,

3         116, 151, 179, 180

4   57.   Denial of infringement opinion from JK Andonian Patent Attorney

5                                  CONCLUSION

6         The issue of post settlement breaches by Defendant Sean Bogunia and the

7   unwillingness to reach a settlement are both red herrings. Plaintiff's communications with Joe

8   Stevens were the precipitating cause of Defendant going public on the settlement of the case.

9   Both parties counsel are uncertain and have agreed to jointly obtain and pay for a transcript to

10  resolve the issue of confidentiality even being in the settlement that was heard by the parties

11  and agreed to in Court. The incidents after the settlement were unfortunate and although in

12  anger Defendant said he would provide information to defeat the Plaintiff's patent, he took no

13  such action.

14        The settlement can not reasonably be construed as a victory for the Plaintiff. Plaintiff

15  did not win even one of the substantive results sought in his complaint. Under 35 U.S.C. 285

16  an award of attorney fees is permitted to Plaintiff only if he is the prevailing party.

17

18

19                  Respectfully submitted

20          _____/S_____

21           Arthur Evry, Esq

22          Attorney for Defendants SEAN BOGUNIA,   REBECCA BOGUNIA, and

23  SEAN BOGUNIA'S ULTIMATE MAGIC  PRODUCTIONS, LLC

24

25

26

27

28

```
1                          Exhibit "A"

2    e Mail Correspondence post trial by Plaintiff relating to

3    claims of Victory in this case.

4


5
     Sean Bogunia
6
     1.
7    Begin forwarded message:

8
          From: "Joe Stevens" <joe@stevensmagic.com>
9         Date: April 28, 2010 4:10:10 PM EDT
          To: <DancingHanky@aol.com>
10        Subject: Fw: court results
          Reply-To: "Joe Stevens" <joe@stevensmagic.com>
11

12        ----- Original Message -----

13        From: Mesika Magic

14        To: Joe Stevens

15        Sent: Friday, April 16, 2010 1:30 PM

16        Subject: Re: court results

17        Hello Joe


18        Everything I mentioned in my last Email is 100% true. I have no desire to mislead or
          lie to you, if I did it would only hurt me in the end. How could of Sean won the case if
19        he is required to pay me a royalty fee, give me full credit and be forbidden to produce
          future products infringing with my current patent? Yes Sean stood up to me, but he did
20        not walk away with a win in his pocket. He is clearly in a state of delusion in order to
          feel better about the outcome. I promises to keep you in he loop and only tell you the
21        truth as I have since day one. As you can see from Sean's message its full of emotions,
          not facts. I welcome Sean to open up his Yigal Free Zone, I will have my U.S. patents
22        and lawyers waiting for him.

23        Thanks for sending me Sean's Email.

24        Best regards,

25        Yigal

26        On Apr 16, 2010, at 10:30 AM, Joe Stevens wrote:

27             Ylgal; Please see the message that Sean sent to me recently..a complete different
               summary than yours????? Is he lying to me??
28
```

JS

----- Original Message -----

**From:** Sean

**To:** Joe Stevens

**Sent:** Thursday, April 08, 2010 6:40 PM

**Subject:** Re: court results

My god every word he says is a LIE why do you even talk to him.

Here is the truth ( it's all I know I don't have time for lies and games)

The case was dissmissed.

The case is over!! If he says it's not it's a lie. The only thing that is left is for the judge to decide if he gets his attorney fees paid or if I get my attorney fees paid. my lawyer says that there's an 85% chance that I will get paid by him. He thinks if I don't get paid the judge may tell us both no body gets paid. Tell him that there is a magician who is going to challange his patent at the patent office.

I have provided him with everything he needs to get his BULLSHIT patent thrown out once and for all!!

The case has already been decided the judge is only determining who is entitled to lawyer fees if any, that's all. He could not prove infringement and I will remind you once again that the judge told him that he will lose the case loses his patent and likely have to pay me if it went to trial. case dismissed it's over quit talking to him!!!!

I'm the first person to actually stand up to him and I won the case!! have some balls!! stand up to that idiot!!

All of his clams are bullshit!!

Even loops!! Feel free to let him see this e-mail if you want..tell him I said hi loser!!!! ( love the clown) ;-)

Hey if you really want to sell your toeswitch put it up on my site!!

Hell anything that he tells you. You can't sell put it up on my site.

I'm making a part of my website

Called the "Yigel free zone"

We are going to sell all items reels and loops from the people who didn't stand up to him and just quit sell there stuff.

I'm so sick and tired of this asshole and I'm not the only one!! I bet I had about 20 diffrent magician call me telling me about his threats!!!

I have spent alot of time and money to find out what he is all about..

Guess what I found out he is a loser!!!

Most of the time I'm a nice guy. But when it comes to that guy I'm just plan sick of his shit!!

Sean Bogunia

On Apr 8, 2010, at 5:27 PM, "Joe Stevens" <joe@stevensmagic.com> wrote:

> Sean; Well...I tested them out this afternoon...thought you'd be interested in their reply to me???????? Is this Bull shit..or is it cow shit??
>
> Can you belive it??
>
> Joe Stevens
>
> Where in the hell do they think they are going by telling me that the attorneys will meet again in 2 months..and another court hearing in 3 months???
>
> Now what.
>
> ----- Original Message -----
>
> **From:** Mesika Magic
>
> **To:** Joe Stevens
>
> **Sent:** Thursday, April 08, 2010 4:12 PM
>
> **Subject:** Re: court results
>
> Hello Joe
>
> Thanks for the follow up.
>
> We had a date set for the court and the judge decided our attorneys will need to meet again in 2 months and there is a another court hearing scheduled for 3 months. As of right now there has been no conclusion made.
>
> Thanks again for you interest in this matter, we will keep you posted as it unfolds.
>
> Best regards,
>
> Spencer - Yigal Mesika Magic
>
> http://yigalmesika.com/
>
> On Apr 8, 2010, at 1:04 PM, Joe Stevens wrote:

1

2

3

4

5

6

7

8

9

Hi Yigal;

I am interested to hear from you first...as to how your court trial came
out with regards to Sean Bogunia..?

As you know, we have been waiting for a long time to hear about this
because of the simple toe switch that we have in one of our tricks..

Out of respect for YOU...we pulled the advertising as you
requested....but we do want to pick it back up since we still have a
small inventory of them in stock.

Please let me know and all warm regards

Joe Stevens

10   ----- Original Message -----

11   1. **From:** Mesika Magic

12   **To:** Joe Stevens

13   **Sent:** Tuesday, April 20, 2010 2:01 PM

14   **Subject:** Re: court results

15   Joe

16   I wish you had told me you were going to give him the units. You knew what was going to
      happen. I'm not going to get mad, I want to be out of this, you guys do whatever you want.

17

18   Yigal

19   On Apr 20, 2010, at 11:53 AM, Joe Stevens wrote:

20      Yigal;

21      YOU are disappointed! I am too! I did what I told you I would do and refrained from advertising
        our effect with a simple toe switch early last year. At that time, you told me the court trial was
        coming up soon! Well soon did not happen. It finally came to fruition this year! All along..I tried
        to do due diligence on this issue and so you know.

22

23      Both you and Sean are my friends! Right from the start Sean told me to not pay any attention
        to you that you could not win? He said that all you were doing was bullying everyone and
        anyone. I still would not go against my word and held off. I checked with you from time to time,
        as you know..and you complain about spending a lot of time with this issue...well, my friend..so
        did I!!

24

25      Sean was adament that you could not push the issue to your advantage....and he gave me
        many examples of why....I still did not run with our little magic trick out of respect to both of
        you!

26

27      On and on and on and on this went....well, finally this year recently it was over and Sean told
        me that you did not win and that he as the right to go ahead and sell his remote toe switches! I
        took him at his word, as I took you at our word...and still held off...and I told him so! You said

28

you won...he says he won! O.K...same old crap!

I told him that it was still confusing..but he insisted that IF anyone challenged your patent...that they would win and you would lose!

I told him that I still didn't feel comfortable and was still out a nice sum of money on the few ones we had left! He said; "No problem...send to him and he would sell them to prove that he had won" and he would challenge you again! He also gave me the phone number of his lawyer and told me to call him to see that he was telling the truth! I am tempted to do this...but I am sick of all of this haggling between the two of you and I have been in the middle and honored both of your requests!

I think you are entirely out of line to say what you say, considering the way that we supported both of you on this matter. At this point in time, I am through with this frustration....I just want to get my money back for making the few trick that I have left! I am not going to challenge you...he offered to take them an as I say above, hwill sell them and he told me you couldn't do anything about it! So what am I too do?

IF you want them...you can have them at my costs....I am through with your problems and his, which have become mine!

Sorry you feel that way...but you seem to have NO feelings for what we did for you...by your below off color remarks. IN closing, I repeat..I did not expect you to act this way either and I am very disappointed with how YOU handled this situation ethically and professionally and take afront to what you say.

Thank you...

Joe Stevens

----- Original Message -----

**From:** Mesika Magic

**To:** Joe Stevens

**Sent:** Tuesday, April 20, 2010 12:54 PM

**Subject:** Re: court results

I spent a tremendous amount of time righting you all the emails and giving you all the details about the case. After all this you gave the product to someone that is going to purposely step on my toes by selling it. I did not expect you to do that and I'm disappointed with how you handled this situation ethically and professionally.

Yigal

On Apr 17, 2010, at 8:35 AM, Joe Stevens wrote:

thanks..I understand...I want to get out of this confusion as well...I love magic...and things like this take away some of the love...regardless of who is right or who is wrong..I've seen problems like this all of my magic life...and the bottom line to me is that "It's only a magic trick"...so I dont' get involved....but I do try to honor when and where I can.

I"ve told Sean what you said...and that I was through trying to keep out of it...and I still have 4 or 6 of the Tattle Tales left in stock...as they haven't sold and we haven't pushed them as they do come with that toe

31

switch..(remote)....he said he'd buy them all from me and that he was going to sell them in spite of you!

I mentioned he could be in trouble again...but he seems to think that he will NOT be in trouble!

YIgal...again, I'm through and will let him fight you...in this way..I have supported you by not selling or mentioning the item on our site...even though it is up on our site but with NO mention of the toe switch, etc. I have a good amount of money left in them...so it only makes it prudent to do so....there is not that many also.

IF he does sell them...then you have the right to do as you say...and file claim against him for damages.

In fairness..I wanted you to know about this and be alerted to the fact that he will be selling it or advertising it however he wants to.

With all regards and best wishes

Joe Stevens Stevens Magic Emporium

----- Original Message -----

**From:** Mesika Magic

**To:** Joe Stevens

**Sent:** Friday, April 16, 2010 2:37 PM

**Subject:** Re: court results

Hey Joe

I already gave you in the past my patent number and have proven I'm the first to come up with it. Ethically and professionally this is my own creation. By you putting the product on your site creates more damage to my innovative ideas. I hope you understand that I'm just trying to protect my right by being as fair and ethical as I can. We have a great long business relationship and I consider you a friend. I have helped you many times in the past and I think we should continue our successes.

Have a nice weekend

Yigal

P.S.

I recently came back from a tour in Blackpool and vacation in Israel. The convention was very interesting and I had a lot of fun meeting nice people. Since its close to Israel I went to visit family and friends. In one of the meeting I had in Israel I discovered an acquaintance of mine was working on a new magic item with drawings and story lines. He has some really nice ideas and is about to release the first one next month with

Murphy's. I tell you this because he also showed me one of your magic effects called Baby Gage by Ken Brooks. He presented it with a new design and full colored images. He did not know at the time it was being sold by you and invented by Ken Brooks. I told him this would be unethical to sell and only harm his business. I continued to say I was a good friend of Joe and that he is making a big mistake. He then said he would put it aside and consider doing it in the future. Just letting you know because if I had not been there this product would be in production as we speak.

**From:** "Joe Stevens" <joe@stevensmagic.com>
**Date:** April 28, 2010 4:05:39 PM EDT
**To:** <DancingHanky@aol.com>
**Subject:** Fw: saga
**Reply-To:** "Joe Stevens" <joe@stevensmagic.com>

----- Original Message -----

**From:** Mesika Magic

**To:** Joe Stevens

**Sent:** Tuesday, April 20, 2010 2:10 PM

**Subject:** Fwd: saga

Hello Joe

Just to refresh you memory please read the email below. This matter should have been solved a year ago. We came to an agreement and I thought this issue had been solved.

Best

Yigal

Begin forwarded message:

**From:** Mesika Magic <mesika@me.com>

**Date:** August 20, 2009 3:55:43 PM PDT

**To:** Joe Stevens <joe@stevensmagic.com>

**Subject: Re: saga**

Listen Joe

We are good friends and I understand that you were trying to help solve this problem. I don't mind if you sell the 9 units you have just please don't promote them. I hope this wont cause me a problem down the line with people thinking the Tale Tale effect was the originator of the remote toe switch.

Sincerely,

Yigal

On Aug 20, 2009, at 3:01 PM, Joe Stevens wrote:

Hi Yigal;

I understand...enough frustration for all of us...and you know that my interest was trying to find out who, what, when and where, etc.???

33

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I know for a fact that Kerry Pollock has been selling then for years....heard from two reliable sources....but I've never met Kerry nor have I ever purchased anything from him...so I don't feel comfortable or obligated to contact him about your problem with Sean....

Here's what we are going to do for the next few months...we will NOT run the photo of our toe switch with our item so as to not confuse the issue which may well be brought out into the open the remaining months of this year...

Towards the end of the year..or IF we hear of something definite from you or Sean, in that there has been an agreement or a nullification of your potential patent..then we will act accordingly....

It is no big deal to us..except that we have some of the Tattle Tales that we have already paid for (9) of them...and we sure don't want to end up without being able to get rid of them and get our money back...since we had these made without knowing there was a problem.

So..my friend...I will not bother you again with this...and hope that it all works out for everyone.....!

Good luck

Joe Stevens

----- Original Message -----

**From:** Mesika Magic

**To:** Joe Stevens

**Sent:** Thursday, August 20, 2009 11:46 AM

**Subject:** Re: saga

Dear Joe

I'm not feeling comfortable contacting Kerry as well. I don't want to involve him in this drama. I have already check his website and he has NOTHING like a toe switch remote control. Since he is into electronics I don't want him to know about my idea so he does not make it himself. If you have anyone that has bought it from him in the past that will be great evidence that he made it. Regarding Sean, he is selling this remote because he copied it from me. I'm not happy with continuing this anymore. I keep repeating myself and its getting us nowhere. If you believe Sean you can go and put the product back on your site.

Sincerely,

Yigal

On Aug 19, 2009, at 1:32 PM, Joe Stevens wrote:

Thanks for speedy reply....glad to help both of us...

I don't know Kerry Pollock...it would be hard for me to ask him for one of his models...to send to you?? I think..IF you log onto his web site..you will see all of the many things he has made and sells to magicians and musicians...and you may even want to ask him IF he has, indeed, made these for ten years.

I don't feel comfortable asking Sean to send you one either..(And I don't have one myself or I would send to you)..as he may well be holding this as evidence IF you all go

34

to trial... You ask me the impossible...how am I going to get one..UNLESS I buy one under a different name, to send toyou?

OH well...as an unbiased spectator...I really do think that a remote toe switch has been around for many years...and can be proven...

IF I didn't respect you..I wouldn't bother giving you my knowledge that I have garnered from several people.

Joe Stevens

----- Original Message -----

**From:** Mesika Magic

**To:** Joe Stevens

**Sent:** Wednesday, August 19, 2009 3:14 PM

**Subject:** Re: saga

On Aug 19, 2009, at 12:23 PM, Joe Stevens wrote:

My dear Yigal;

Each week I am getting more and more information on the problem with remote controlled toe switches...I am doing my best to do "due dillegence" and have found out that;

Kerry Pollock has been making remote controlled toe switches for years.

So Far I have not seen a devise from Kerry. I will appreciate that you show me a devise so It can be confirmed with my own eyes.

Sean Bogunia now confirms that he has made them since 2004.

As I stated many times in my emails, Sean has never sold anything along the lines of a remote toe switch as you can see on his web base we sent you. If he did in fact make them since 2004 SHOW ME THE PROOF DONT JUST SAY HE DID. Apparently you have lots of people telling you its been done but its been over a month now and you have failed to show me a devise.

So...they claim that your creation was not a new idea??

Have you contacted Kerry Pollock yet about this? If not...shouldn't you do so? I hate to see you spend more time and money if, as you said...IF someone has indeed created a remote controlled toe switch...you would understand that you are not the first?

I seem to be trying to help all parties on this

35

1
   problem...so please have patience with my
   research.

2
   With all respects

3
   Joe Stevens Stevens Magic Emporium

4
   I hope you understand my point of view

   Take care

5
   Yigal

6

7
   Date: 08/20/09 06:05:00

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28